**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| J.P. MORGAN SECURITIES LLC and J.P. MORGAN CHASE BANK, N.A. | ) ) ) | |
| Petitioners, | ) ) | No. 1:21-CV-02497 |
| v. | ) ) | Judge Edmond E. Chang |
| CRESSET ASSET MANAGEMENT, LLC, | ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Douglas Regan used to work for J.P. Morgan Securities LLC and J.P. Morgan Chase Bank, N.A. (for convenience's sake, J.P. Morgan). Regan and the bank are now mired in an arbitration dispute. In this federal lawsuit, J.P. Morgan is petitioning to enforce a subpoena against Cresset Asset Management, LLC, which is Regan's current employer. R. 1, Pet. ¶ 2.[1] Cresset moves to dismiss, arguing that this Court lacks subject matter jurisdiction, and that the petition fails to state a claim. R. 14. For the reasons explained in this Opinion, Cresset's motion to dismiss for lack of subject-matter jurisdiction is denied. But Cresset shall file a Jurisdictional Statement (with accompanying evidence), as described in this Opinion, so that a final decision may be made on whether diversity jurisdiction applies.

---

[1]Citations to the record are noted as "R." followed by the docket entry.

# I. Background

Douglas Regan began working for J.P. Morgan in 2012. R. 1-1 at 33, Arbitration Claim Exh. A, Offer Letter at 1 (PDF at 34).[2] His employment agreement contained two provisions relevant to this litigation. First, for one year after leaving the bank, he was banned from soliciting or recruiting any J.P. Morgan employees. *Id.* at 5 (PDF at 38); R. 1-1 at 45, Arbitration Claim Exh. B, J.P. Morgan Code of Conduct at 31 (PDF at 53). Second, if any dispute were to arise between J.P. Morgan and Regan, it would be resolved by binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 7 *et. seq*. Offer Letter at 6–11 (PDF at 39–44). Regan left J.P. Morgan in 2017, and joined Cresset as CEO. Pet. ¶ 14. According to J.P. Morgan, at least 10 of their employees were hired by Cresset in the year following Regan's departure. R. 1-1 at 11, Arbitration Claim ¶ 2 (PDF at 13). Regan maintains that all hiring was handled by an executive recruiter employed by Cresset, a process he played no part in. *See* R. 1-1 at 90, Cresset's Obj. to Subpoena at 6 (PDF at 96); *see also* R. 15-2 at 37, Griesmeyer Aff. Exh. 13, Hatfield Decl.

Believing that Cresset has information that is necessary to resolve the dispute with Regan, J.P. Morgan twice attempted, unsuccessfully, to have Cresset added as a party to the arbitration. Pet. ¶¶ 2 n.1, 16 n.2; *see generally* Arbitration Claim. J.P. Morgan then asked the arbitrator to issue a subpoena requesting that Cresset appear

---

[2]J.P. Morgan filed all of the exhibits to its Petition in one PDF. R. 1-1. This 128-page document is difficult to navigate, so citations to it will cite to both the internal pagination of the cited exhibit, and the PDF page number. Cresset presented a similar challenge with its exhibits, filed in two composite files of 181 and 315 pages, respectively. R. 15-1, R. 15-2. Those exhibits will be handled the same way.

and produce 40 categories of documents. R. 1-1 at 1, Subpoena. That subpoena is the subject of this litigation.

After negotiations failed to produce a resolution, J.P. Morgan first filed an action to enforce the subpoena in the Circuit Court of Cook County. R. 15-2 at 208, Griesmeyer Aff. Exh. 30, Circuit Ct. Pet. The state court dismissed the petition, accepting Cresset's argument that only federal district courts have jurisdiction to enforce a subpoena under the Federal Arbitration Act. R. 15-2 at 300, Griesmeyer Aff. Exh. 34, Circuit Ct. Order. J.P. Morgan then filed the current petition here in federal court, asking to enforce the subpoena. The petition alleged jurisdiction under 28 U.S.C. §§ 1331 and 1332(a). Pet. ¶¶ 7–8. That is to say, the petition alleged that there is both federal-question jurisdiction and diversity jurisdiction. J.P. Morgan is simultaneously pursuing an appeal of the state court's decision in the Illinois Appellate Court. R. 15-2 at 306, Griesmeyer Aff. Exh. 35, Notice of Appeal.

Cresset moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that this court lacks jurisdiction, and that the petition fails to state a claim. R. 14, Resp't.'s Mot. Dismiss. This Opinion addresses only the Rule 12(b)(1) motion on the threshold issue of subject matter jurisdiction.

## II. Legal Standard

A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. ShoreBank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), whereas a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan*, 570 F.3d at 820;

3

*Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(1) motion, the petitioner must establish that the district court has subject-matter jurisdiction. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2011), *overruled on other grounds, Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." *Id.*

### III. Analysis

#### A. Estoppel

At the outset, J.P. Morgan argues that Cresset should be estopped from contesting subject matter jurisdiction in this Court. R. 20, Pet'rs.' Br. at 5 (citing *Ogden Martin Sys., Inc. v. Whiting Corp.*, 179 F.3d 523 (7th Cir. 1999)). J.P. Morgan says that Cresset argued that the state court lacked jurisdiction to enforce the subpoena, forcing J.P. Morgan into federal court, so Cresset should now be blocked from disputing subject matter jurisdiction here. Pet'rs' Br. at 6–7.

But the simple answer to this is that subject matter jurisdiction is not subject (no pun intended) to estoppel. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *United States v. Maranda*, 761 F.3d 689, 694 (7th Cir. 2014). Parties cannot avoid a lack of subject matter jurisdiction by agreeing to it, and indeed no party can waive or forfeit subject matter jurisdiction. It is indispensable. Because estoppel does not apply, there is no need to address the question of

4

whether Cresset's position before the state court and its position before this Court are truly inconsistent. *See* R. 22, Resp't.'s Reply at 11–12.

## B. Federal Question Jurisdiction

In its petition, J.P. Morgan alleges that this Court has federal-question jurisdiction under 28 U.S.C. § 1331, because the subpoena was issued under a federal statute, namely the Federal Arbitration Act (which is often referred to as the FAA). Pet. ¶ 8. Cresset correctly points out, however, that the FAA by itself does not form the premise of federal-question jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).

Conceding that point, J.P. Morgan next argues that state and federal courts have concurrent jurisdiction to enforce the FAA. Pet'rs.' Br. at 4–5. Although it is true that the FAA carries a presumption of concurrent jurisdiction, *Moses H. Cone*, 460 U.S. at 25–26, that does not actually help J.P. Morgan establish jurisdiction in federal court. The primary ambit of concurrent jurisdiction is to authorize (and, indeed, generally require) state courts to hear federal-law claims. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981) ("In considering the propriety of *state-court jurisdiction over any particular federal claim*, the Court begins with the presumption that *state courts* enjoy concurrent jurisdiction.")(emphasis added). The presumption of concurrent jurisdiction under the FAA is not a path into federal court without some independent basis for federal jurisdiction. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

5

Because the FAA by itself does not confer federal-question jurisdiction, and because J.P. Morgan alleges no other basis for federal-question jurisdiction, that form of jurisdiction does not apply.

### C. Diversity Jurisdiction

J.P. Morgan next asserts that diversity jurisdiction applies, 28 U.S.C. § 1332(a). Pet. ¶ 7. The diversity-jurisdiction statute requires complete diversity between the plaintiffs and the defendants, along with at least $75,000 in controversy. 28 U.S.C. § 1332(a)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). When determining diversity of citizenship, a corporation is considered a citizen of its state of incorporation and its principal place of business. *Lincoln Prop. Co.,* 546 U.S. at 94 (citing 28 U.S.C. § 1332(c)(1)). An LLC's citizenship is based on the citizenship of its members. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). If any of the LLC's members are citizens of the same state as the opposing party, then there is no complete diversity. *Id.*

To begin, J.P. Morgan adequately pleaded that there is more than $75,000 in controversy. Pet. ¶ 10. Allegations as to the amount in controversy are accepted if they are made in apparent good faith. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). Here, Cresset does not appear to dispute that the amount in controversy is more than $75,000. *See* Resp't.'s Br. at 12. So diversity of citizenship is the only point of contention.

On diversity of citizenship, J.P. Morgan pleaded that J.P. Morgan Chase, a corporation, is a citizen of Ohio, because it is incorporated there and has its principal

6

place of business in Columbus, Ohio. Pet. ¶ 12. J.P. Morgan Securities is a citizen of Delaware and New York: it is an LLC and its sole member, J.P. Morgan Broker-Dealer Holdings, is a corporation incorporated in Delaware and has its principal place of business in New York, New York. Pet. ¶ 11. So on the plaintiffs' side of the case are citizens of Ohio and New York.

As to Cresset's citizenship, J.P. Morgan pleaded, on information and belief, that Cresset was "organized under the laws of Delaware, with a [ ]principal place of business in Illinois." Pet. ¶ 13. That is a problematic allegation for two reasons. First of all, citizenship must be proven by underlying facts, not just alleged on information and belief. *See America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992). Beyond that, Cresset is a limited liability company, yet the petition contained no allegations as to Cresset's membership and their citizenship. So J.P. Morgan's first stab at alleging diversity jurisdiction fell short. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("[A]n LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well.").

When this defect was brought to the bank's attention, rather than amend its pleading, J.P. Morgan filed a declaration describing its research into Cresset's membership and arguing that its research suggested there was complete diversity. *See* R. 20-1, Weintraub Decl. In response, Cresset first attacked the sufficiency of J.P.

7

Morgan's research, but—quite conspicuously—did not dispute J.P. Morgan's conclusion that there is complete diversity of citizenship. Resp't.'s Reply at 6–9.

Cresset later filed, however, a brief in support of its Rule 12(b)(6) motion to dismiss, asserting for the very first time that it has members in Ohio and New York. R. 26, Resp't's 12(b)(6) Br. at 1–2. Specifically, Cresset submitted an affidavit in which its general counsel, William Rudnick, explains that one "ultimate" member ("ultimate" meaning tracing through the layers of membership) of Cresset is "A.M.," a New York citizen, and another ultimate member is "E.W.," an Ohio citizen. R. 26 at 21, Exh. A, Rudnick Decl. ¶¶ 4–6. Rudnick further asserts that both E.W. and A.M. were members of the relevant entities before J.P. Morgan filed this action on May 10, 2021. *Id.* ¶ 7. If true, then that would destroy complete diversity. Given the sequence of filings—and the bizarre failure of Cresset to trace its membership and citizenship earlier in this case—J.P. Morgan has understandably asked to take discovery on Cresset's membership. R. 27, Pl's. 12(b)(6) Br. at 3. For the sake of cost effectiveness, however, the Court will hold off (for now) on ordering discovery, in favor of simply ordering Cresset to provide the necessary information as discussed below. If it becomes necessary to order discovery, however, then the Court will do so.

There still are several problems with Cresset's disclosure of its citizenship. First, it is incomplete: it does not list *all* of its members, and the ones who allegedly destroy diversity jurisdiction are identified only by their initials. To establish (or refute) diversity of citizenship, Cresset must trace its members through *all* layers of partnerships and inform the court of *all* of its end-members' actual identity and

8

citizenship. *Thomas*, 487 F.3d at 534; *see also Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 320 (7th Cir. 2002). Rudnick's affidavit provides only a partial listing of the members of Cresset Asset Management, and a partial listing of the members of Cresset's members. He identifies only two individual end members, and only by their initials. The Court needs more information than that for a full identification: the full names of all members, and all of their citizenship. If Cresset has some valid concern about publicly disclosing its membership, it can file a motion to seal those records on the docket, although it will need to meet the Seventh Circuit's high standards for removing documents from public view, particularly when that information is the premise of judicial decision-making.[3]

Cresset's second problem is that what little information it does provide about its members, it has provided through the affidavit of its general counsel, unsupported by any other *evidence*. Ordinarily, an affidavit based on personal knowledge would suffice to refute jurisdiction. But considering the incompleteness of the affidavit, and its strangely late appearance on the docket, the conclusory affidavit is not enough, on its own, to prove citizenship. *See, e.g.*, *Thomas*, 487 F.3d at 534 ("Once the court sounds the alarm, the litigants must be precise, and the court can no longer take on faith the lawyer's blanket declaration that the partners are citizens of another state.") (cleaned up). Cresset filed an opening brief and a reply brief specifically on the issue

---

[3]The Seventh Circuit has emphasized the principle "that litigation be conducted in public to the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), *abrogated on other grounds by Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016); *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002).

9

of subject matter jurisdiction, R. 15 and R. 22, and failed to disclose the allegedly dispositive membership information in either document, unaccountably saving that bombshell for its Rule 12(b)(6) filings. Now Cresset must provide additional evidentiary support to establish its membership, its members' citizenship, and the timing of its members' citizenship—that is, proof that they were members before this action was filed.

Defective jurisdictional allegations can be amended upon terms. 28 U.S.C. § 1653. When parties have failed to properly allege subject-matter jurisdiction, a federal court has the authority to order the filing of supplemental jurisdictional memoranda to resolve the issue expeditiously. *See, e.g., Meyerson*, 312 F.3d at 320. If the parties fail to comply with that request, or if the jurisdictional allegations remain defective, then dismissal may then be warranted. *See id.* at 320–21 (directing that the case be remanded to state court as the parties repeatedly failed to establish diversity of citizenship, even after the district court "directed the parties to supply jurisdictional information."). But in a case like this one, in which the party withholding the information that would confirm or deny jurisdiction is also the party that would benefit from dismissal, courts may extend multiple opportunities to provide the correct information. *Thomas,* 487 F.3d at 534 ("…we gave the parties a more-than-generous third opportunity …. Had we done otherwise, Guardsmark would have received a windfall—having the verdict against it vacated and the case dismissed for want of jurisdiction, due to its own failure to correctly identify the source of diversity jurisdiction.").

As noted above, Cresset has now made a belated and incomplete disclosure of the citizenship of its members. Consistent with the authorities cited above, this Court has authority to compel full disclosure of the information needed to determine if diversity exists. Cresset is directed to file a Jurisdictional Statement disclosing the identity and citizenship of all of its members, and, to the extent those members are themselves limited liability companies or partnerships, all of *their* members, all the way down to each ultimate member. The pertinent time is when this action was filed. *See Thomas*, 487 F.3d at 534. Cresset must provide additional records—beyond a second-hand affidavit—to prove the membership and citizenship of any member that is alleged to destroy diversity jurisdiction in this action.

### D. Recovery of Costs and Fees

Finally, Cresset requests that any further filings be conditioned on recovery of its costs and fees. Resp't.'s Br. at 14–15. There are a number of devices a party can use to recover costs and fees, if it believes that the other party has unreasonably prolonged litigation or that the other party's deficient filings have caused it to incur unnecessary costs. The Federal Rules of Civil Procedure provide one way for a party to make such a motion. Fed. R. Civ. P. 11(c)(2). In addition, 28 U.S.C. § 1927 allows recovery in the face of "unreasonabl[e] and vexatious[ ]" litigation. These devices give courts a standard for determining when this type of relief is proper, and a procedure by which such relief can be assessed. Cresset failed to invoke any of these devices.

In any event, the strong preference of the federal system is that cases be decided "on the basis of the substantive rights involved rather than on technicalities."

11

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (cleaned up). A party should "be given every opportunity to cure a formal defect in [its] pleading," an opportunity denied "only if it appears to a certainty that plaintiff cannot state a claim." *Id*. More specifically, denial of the opportunity to correct a deficient pleading is appropriate in cases of "undue delay, bad faith, dilatory motive," failure of previous amendments to cure deficiencies, "undue prejudice … or futility." *Villa v. City of Chi.*, 924 F.2d 629, 632 (7th Cir. 1991).

None of these apply here. It was not J.P. Morgan that caused any undue delay. Moreover, delay by itself is not a sufficient reason for denial, unless combined with other factors. *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir.1988). There is no evidence that J.P. Morgan brought this petition in bad faith. As Cresset itself outlines, J.P. Morgan has been dogged in seeking this information. *See generally* Resp't.'s Br. at 3–9. The facts do not suggest, nor does Cresset allege, that J.P. Morgan would suddenly attempt to deliberately delay these enforcement proceedings. J.P. Morgan has not previously amended the complaint. Undue prejudice to the opposing party arises in the case of "[e]leventh hour additions of new legal and factual theories," *Campbell v. Ingersoll Mill. Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990), or when the "loss of evidence or of a witness" will prevent the opposing party from proving his or her case, *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). No evidence regarding citizenship has disappeared or gone stale since this petition was filed. Finally, largely because Cresset has chosen to resist full disclosure of its membership, it is not clear that further filings would be futile.

Because Cresset failed to plead any basis for recovery of costs and fees, and because their request to limit repleading is at odds with the federal preference for resolving disputes on the merits, Cresset's request for costs and fees is denied.

## IV. Conclusion

Cresset's motion to dismiss for lack of subject-matter jurisdiction is denied. But Cresset shall file a Jurisdictional Statement and accompanying evidence as described in the Opinion so that a final determination can be made as to diversity jurisdiction. The Jurisdictional Statement is due on or before January 5, 2022. After the Statement's filing, the parties shall confer on the need for any more evidence, and J.P. Morgan may file a motion for discovery after the conferral. But if indeed there is no diversity jurisdiction, J.P. Morgan must retreat to state court.

ENTERED:

                                      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 15, 2021